

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

GROVER SELLERS
~~WILL WILSON~~ xxx
~~ATTORNEY GENERAL~~ xx

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin 11, Texas

Dear Sir:

Opinion No. 0-6138

Re: State Tax Board may certify
intangible assessment found
on carriers engaged in busi-
ness as common carriers on
January 1, 1944 under facts
stated.

Your letter of July 31, 1944, requests an opinion relative to the assess-
ment of a tax on the intangible assets of the busses and trucks as provided in
Chapter 4, Title 112, Revised Civil Statutes of Texas as amended by House
Bill 8, Acts of the 47th Legislature.

We quote the second and the last paragraph of your letter as follows:

"A re-check and investigation has been made of the Rail-
road Commission records and certain facts have been developed
therefrom. A few of the truck lines were omitted from the min-
utes of the State Tax Board dated June 20, 1944. We find that
some of the truck lines' certificates have been transferred to a
new concern purchasing these certificates. The purchaser re-
ceived the seller's authority after January 1, 1944. However,
the business was in operation on and before January 1, 1944,
with neither the old nor the new operator being assessed. In
other cases they had received a temporary certificate to oper-
ate pending the issuance of the final certificate, the final certifi-
cate being issued after January 1. Other carriers had filed their
applications and clearly indicated that they were already operat-
ing, but convenience and necessity had not been proven, and the
Railroad Commission had not issued their certificates until after
the first of the year. It might be stated at this point that we made
no attempt to develop a case if the certificate was issued after
the first of March, 1944, and in no case did we even list a line
that had filed an application prior to January 1.

". . .

"Please advise me whether or not the State Tax Board will be allowed to certify any intangible assessment found on the carriers that were constructively engaged in business as a common carrier at January 1 under any or all of the circumstances as mentioned in the second paragraph of this letter. If your answer to this question should be negative, then advise whether or not the assessor may back-assess these intangible values after he has been notified of the amount by the Comptroller of Public Accounts, or by any other method that would enable him to discover these values."

We believe that the Attorney General's opinions numbers 0-3546 and 0-4441, both of which were addressed to you, when considered together, substantially answer the question here stated. In the opinion which follows, we are relying upon these previously written opinions and have attempted merely to combine those portions of said opinions which most directly relate to your question in order that you may have the substance of such opinions before you in a more convenient form.

Article 7105 of Vernon's Civil Statutes of Texas as amended by Article 13 of House Bill 8, Acts 47th Legislature, Regular Session, provides:

". . . each 'motor bus company,' as defined in Chapter 270, Acts, Regular Session of the Fortieth Legislature, as amended by the Acts of 1929, First Called Session of the Forty-first Legislature, Chapter 78, and each 'common carrier motor carrier' operating under certificates of convenience and necessity issued by the Railroad Commission of Texas, doing business wholly or in part within this State, whether incorporated under the laws of this State, or of any other State, territory, or foreign country, and every other individual, company, corporation, or association doing business of the same character in this State, in addition to the ad valorem taxes on tangible properties which are or may be imposed upon them respectively, by law, shall pay an annual tax to the State, beginning with the first day of January of each year, on their intangible assets and property, and local taxes thereon to the counties in which its business is carried on; . . ."

Opinion No. 0-4441 held that the Legislature intended to include within the terms of the statute carriers operating without a certificate in the following paragraph quoted from that opinion:

"The Legislature must have had some purpose in mind when it enacted the sentence in Article 7105 that 'every other individual, company, corporation or association doing business of the same character in this state, in addition to the ad valorem taxes on tangible properties . . . shall pay an annual tax to the state . . . on their intangible assets and property, and local taxes thereon to the counties in which its business is carried on . . .' We think that the Legislature clearly meant to include, within the meaning of the sentence just quoted from Article 7105, any individual or concern 'doing business of a similar character' to a 'motor bus company' or a 'motor carrier.' The fact that the individual or concern has not complied with the laws of this state does not weaken the strength of our conclusions. Rather it strengthens it. The Legislature cannot be presumed, in the absence of compelling words clearly showing a contrary intention, to have intended an absurd, or unjust or unfair result of the application of the intangible tax law so as to result in pecuniary advantage or favor to those who willfully or inadvertently disregard the laws of this state. 39 Tex. Jur., p. 246. We think the statute permits no such interpretation."

Clearly it is not necessary to broaden the construction here placed on the statute in order to include within its terms the truck lines or operators mentioned in paragraph 2 of your letter.

Thus far we have held that the lines mentioned in your letter are subject to the assessment of an intangible assets tax. In holding further that the State Tax Board may certify such intangible assessment found on carriers that were engaged in business as a common carrier on January 1 under the circumstances stated in your letter, we cite the authority of the case of Cadena v. State, 185 S. W. 367 as quoted in opinion No. 0-3546:

"All property owned on the 1st day of January is subject to any tax authorized by law, whether such taxes have been authorized theretofore or may be authorized during the year, and can be levied by the body given the power to levy at any time during the year. Laws naming the time for the levy of taxes are merely directory, and legal taxes can be levied whenever the necessity arises. Laws authorizing taxes are not retrospective so far as the year in which they are authorized is concerned."

See also Masterson v. Hedley, 265 S.W. 406; 61 C. J. 564.

While the words "levy" and "assessment" as used in tax parlance are not exactly synonymous, yet the one includes the other in that the assessment is a necessary part of the levy. We think it does not strain the construction to hold that the certification of the intangible assessment is also a necessary part of the process of the levying of the tax, and, that in order to carry out the intention of the statute, that which is subject to taxation may be assessed and certified within a reasonable time after the date mentioned in the statute for such certification when it is found or discovered to have actually been subject to the tax on January 1.

Since we have answered in the affirmative your principal question, it becomes unnecessary to consider the question which you propounded in the alternative.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By Robert F. Cherry
Robert F. Cherry
Assistant

RFC/JCP

APPROVED SEP 11, 1944

(Acting) ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
By _____
Chairman